## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **ANDREW HANGO** | * | **CIVIL ACTION NO. 05-2196** |
| **VERSUS** | * | **JUDGE JAMES** |
| **ALBERTO GONZALES, ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a petition for Habeas Corpus relief filed by petitioner pursuant to 28 U.S.C. § 2241 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). For reasons stated below, it is recommended that the petition be GRANTED and that petitioner be released from custody pending removal upon reasonable restrictions.

## I. Procedural And Factual Background

Petitioner Hango, a native of Tanzania, filed this petition on December 20, 2005, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he was being unlawfully detained under *Zadvydas v. Davis*, 533 U.S. 678 (2001). It is undisputed that Petitioner entered the United States on September 16, 1997, as a non-immigrant student. However, he never enrolled in classes, and on September 4, 2001, the former INS issued a Notice to Appear charging that petitioner was subject to removal for failure to maintain his non-immigrant status as a student at Cuyahoga Community College in Cleveland, Ohio. Government Exhibit 1. By order entered on October 2, 2002, an immigration judge granted petitioner's application for voluntary departure in lieu of removal on or before January 30, 2003, and ordered petitioner to post a $500 voluntary departure bond on or before October 9, 2002, with the failure to do so resulting in the issuance of an order of removal to Tanzania. Government Exhibit 7. Petitioner

did not post the bond, although he testified at the evidentiary hearing that he and his attorney attempted to do so within the specified delays but were unable to because of the unavailability of a bond processor. *See also* Government Exhibit 10.

On January 28, 2003, petitioner married Twilla J. Jefferson, a United States citizen, and they remain married to date. Shortly thereafter, Petitioner's wife filed a form I-130 Petition for Alien Relative. Government Exhibit 9. On May 18, 2005, the petition was approved. *See* Government Exhibit 29.

A warrant of removal/deportation issued against petitioner on November 10, 2003. Government Exhibit 11. Petitioner turned himself in and was taken into immigration custody on November 6, 2003, *see* Government Exhibit 16, after filing a motion to reopen his removal proceedings based on his marriage and his wife's then-pending I-130 petition. On November 20, 2003, petitioner filed a form I-485 application to register as a permanent resident or to adjust status. On November 28, 2003, the immigration judge denied the motion to reopen because it was not filed within 90 days of the date on which the order of voluntary departure became final administratively. Government Exhibit 14. Also on that date, the immigration judge denied petitioner's application for a stay of deportation. Government Exhibit 14. Petitioner appealed to the Board of Immigration Appeals ("BIA"). Government Exhibit 15.

On February 20, 2004, the BIA affirmed without opinion the immigration judge's denial of the motion to reopen. Government Exhibit 18. On May 28, 2004, the BIA re-issued its decision because it had not been served on the attorney of record and it was thus considered entered on the later date. Government Exhibit 20. On June 30, 2005, the BIA denied as untimely petitioner's motion to reopen and reconsider its decision of May 28, 2004. Government Exhibit 26.

On November 22, 2003, ICE requested a travel document from the Tanzanian embassy, Government Exhibit 13, which was issued on March 29, 2004, and which was valid for six months. Government Exhibit 19. Subsequently, petitioner was ordered escorted to JFK Airport where he was to be put on a commercial airliner for Tanzania on May 12, 2004. Government Exhibit 19. According to the petitioner, he passively resisted boarding the commercial flight and was subject to physical attack by the immigration officers. As a result, the commercial flight attendant refused to allow petitioner to be boarded forcibly, and petitioner was not removed.

On May 19, 2004, petitioner filed a petition for writ of habeas corpus in the United States District Court for the District of New Jersey. *See* Certified Copies of Records in *Hango v. Immigration Service*, No. 04-2361 in the United States District Court for the District of New Jersey (submitted by the government via a letter dated July 25, 2006), Document 1. Petitioner challenged the failure to re-open his removal proceedings in light of his inability to obtain a voluntary departure bond and in light of his marriage to an American citizen with a young son, and also sought a stay of the removal order. *Id*. By order issued on June 3, 2004, the district court stayed the removal order. *Id*., Document 3. On May 16, 2005, the district court issued an order in which it vacated the stay of removal and dismissed the petition with prejudice. *Id*., Document 20. On that same date, the United States Attorney's Office for the District of New Jersey wrote the district court explaining that since the petitioner "challenged only the final administrative order of removal but not any non-removal order issues, the case should have been transferred, in its entirety" to the United States Court of Appeals, pursuant to the REAL ID Act. *Id*., Document 21-1. By order dated May 31, 2005, the district court vacated its previous order, ordered that the petition be transferred to the United States Court of Appeals for the Sixth Circuit, and further ordered the file closed. *Id*., Document 23.

3

Petitioner sought reconsideration of the district court's May 31, 2005, order and a reinstatement of the stay of removal order, *id*., Documents 24 and 25, but the district court concluded that it lacked jurisdiction over the motions and ordered them transferred to the Sixth Circuit on June 20, 2005. *Id*., Document 28. On February 27, 2006, the petitioner again filed a motion for reconsideration, contending that his petition not only challenged the failure to reopen his removal proceedings, but also challenged his continued detention under *Zadvydas*. *Id*., Document 30-1. On April 11, 2006, the petitioner wrote the district court seeking clarification regarding the status of the stay of the removal order. *Id*., Document 31.

By letter dated June 7, 2006, the United States Attorney's office for the District of New Jersey correctly argued that the district court had no jurisdiction to enter a stay of the removal order and could only address the issue of petitioner's continued detention. *Id*., Document 33. The government also took the alternative position that the district court's earlier stay order entered on June 3, 2004, had never been vacated and that the petitioner therefore remained in the United States because he was under a stay of removal. *Id*. On July 18, 2006, the district court issued an order in which it concluded that petitioner was challenging his continued detention, in addition to challenging his removal, and thus ordered that the case be reopened with respect to his claims challenging his detention. *Id*., Document 39.

The certified copies of the records in the Sixth Circuit in *Hango v. Gonzales*, No. 05-3735 in the United States Court of Appeals for the Sixth Circuit (submitted by the government via a letter dated July 26, 2006) show that petitioner filed his brief on the merits on October 26, 2005, and the government filed its brief on the merits on January 13, 2006, on the matter transferred to the circuit court by the district court on May 31, 2005. Petitioner filed a reply brief on February 1, 2006. According to the Clerk of Court's office for the Sixth Circuit, in letters

dated April 4 and 12, 2006, no motion for stay of removal or deportation has been filed with that court, and, further, such a motion would have to be filed with the circuit court before any stay issues could be reviewed. Petitioner's Exhibits 3 and 4.

Petitioner also filed a civil complaint pursuant to 42 U.S.C. § 1983 in federal court in New Jersey on May 16, 2004, in which he complained of being assaulted at the airport on May 12, 2004, and being denied medical attention for his injuries. *See* Certified Copies of Records in *Hango v. Homeland Security*, No. 04-3286 in the United States District Court for the District of New Jersey (submitted by the government via a letter dated July 25, 2006), Document 1-1. By order issued on July 13, 2006, the district court ordered that the case be designated by the clerk of court as a §1983 case, rather than a habeas petition, and that, since it appeared that petitioner's claim had arguable merit, petitioner's request for appointment of counsel be granted. *Id.*, Document 26.

On August 10, 2004, the embassy of Tanzania issued a letter to the district director of ICE in which it stated as follows:

> [the petitioner] has written to us explaining his predicament that he is been [sic] denied justice in his case by not allowing him to present his case to the proper authority. According to his letter, Mr. Hango seems desperate and is in need of immediate attention by his/her case officer.

Government Exhibit 21. The letter further requested an update on petitioner's immigration status. *Id*. The government responded in a letter to the embassy dated October 26, 2004, as follows:

> At this time Mr. Hango has a Writ of Habeas Corpus filed in the United States District Court, District of New Jersey. The court has issued a stay of removal for Mr. Hango; therefore Mr. Hango's removal from the United States is stayed pending further orders from the court.

Government Exhibit 22.

5

On June 1, 2005, (the day after the New Jersey district court vacated its earlier order dismissing the habeas petition with prejudice, and then ordered the case transferred it to the Sixth Circuit and the district court file closed), ICE made a formal, written request of the embassy of Tanzania that a travel document issue on behalf of petitioner. Government Exhibit 25. According to the letter, petitioner was not removed pursuant to the travel document issued on March 29, 2004, because a stay of deportation was granted by the United States District Court for the District of New Jersey. *Id*. However, the letter further states:

> At this time, *the U.S. District Court has dismissed the stay of deportation*. Therefore, Mr. Hango will be scheduled to leave the United States upon receipt of such travel document.

*Id*. (Emphasis added.) On June 24, 2005, the embassy of Tanzania responded:

> It has come to our attention that a Cleveland District Office has on May 18, 2005, approved a relative immigrant visa petition for Mr. Andrew Hango because he is lawfully married to Twilla Hango.
>
> It is regrettable that we are not going to issue a travel document to Mr. Hango as such an action will amount to not only separating him from his wife, but not abiding to the Cleveland Office's decision.

Government Exhibit 25.

On July 15, 2005, ICE wrote the embassy of Tanzania explaining that the approved I-130 petition does not give petitioner legal status to reside in the United States and that petitioner is not eligible for an adjustment of status to that of a legal permanent resident. Government Exhibit 27. On July 20, 2005, an ICE deportation officer requested assistance from the Travel Document Unit in Washington, D.C., in obtaining a travel document for petitioner from the embassy for Tanzania. *Id*.

Despite these efforts, on October 24, 2005, in response to a facsimile dated September 7, 2005 from ICE, the embassy of Tanzania stated that it would not issue a travel document for

6

petitioner, explaining: "[w]e strongly feel that the situation has not changed and on top of that Mr. Hango has a pending case" in the district court in New Jersey. Government Exhibit 28.

An ICE memorandum dated January 31, 2006, recommending petitioner's continued custody, states that petitioner filed for and obtained a stay of removal in the district court in New Jersey, but that the court dismissed the case with prejudice and then vacated this decision and transferred it to the Sixth Circuit pursuant to the Real ID Act. Government Exhibit 29. The memorandum also notes calls to the embassy on January 13, 23, and 31 of 2006. *Id.* On January 31, 2006, ICE again wrote the embassy of Tanzania requesting the issuance of a travel document on behalf of petitioner. Government Exhibit 30.

On February 24, 2006, the embassy of Tanzania, in again refusing to issue a travel document for petitioner, wrote ICE as follows:

> We have reviewed Mr. Andrew Hango's file in light of his current predicament and his welfare in general in this process. Mr. Hango has a legal wife in the United States. As you might well know, Mr. Hango has no family back home, his father passed away several years ago. His mother passed away late last year while Mr. Hango was incarcerated. On top of that, Mr. Hango has a pending case against the authority that beat him up and basically infringed his human rights at an airport in New York.

Government Exhibit 31.

On June 6, 2006, petitioner wrote his embassy and notified it that he was scheduled for a court hearing on his habeas petition in Louisiana in July of 2006. Petitioner's Exhibit 1. Petitioner explained that an issue at the hearing will be whether or not the embassy "is likely to issue travel documents" for his removal in the reasonably foreseeable future. *Id.* Petitioner asked for clarification as to why the embassy has refused to issue a travel document for his removal, explaining that ICE takes the position that it is because of his pending court cases. *Id.* Petitioner further asked that the embassy "explain whether or not my travel document will be

7

available in the near future, even after the completion of my litigation." *Id.* On June 20, 2006, the embassy of Tanzania responded as follows:

> Our letter to Mr. Craig Robinson, Field Officer Director of ICE at Gadsden of February 24, 2006, categorically stated that we are not going to issue any travel document to you because we see it not right for you to be separated from your family here in the United States. We also cited a pending case against authorities who infringed your human rights at an airport in New York. However, the pending case is not the basis for our decision; it is the right to stay with your family here in the United States. The decision was done upon reviewing your entire case, stage by stage and taking into consideration your close family's predicament back home in Tanzania.

Petitioner's Exhibit 2.

In its Pretrial Statement (Document 22, p. 5), filed in the present case on July 7, 2006, the government indicated that it was unclear whether the New Jersey Court's vacatur of its May 16, 2005 ruling, left the prior stay order in effect, and stated that, out of an abundance of caution, ICE would consider the stay order in effect until it receives "a determination from either the New Jersey District Court or the Sixth Circuit." At the evidentiary hearing held in this court on July 11, 2006, ICE Agent Gerald Smith testified that, in the agency's view, when, in May of 2005, the New Jersey district court vacated its earlier decision and transferred the case to the Sixth Circuit under the REAL ID Act, "the stay still remains in place and was – would be transferred over to the 6th Circuit and remains pending today." Evidentiary Hearing Transcript ("Tr.") at p. 11. According to Smith, as a result of the pendency of a stay of removal since May of 2005 to date, "technically there's not much movement when it comes to the cases," although they "like to go forward and request documents and have contact with the embassy." Tr. at pp. 11-12.

Smith did admit that petitioner has never lied about his identity, where he was born or who his parents were, and he has cooperated with ICE in their efforts to request a travel document from his embassy to the extent that he has assisted in the preparation of the required

8

paperwork, including the completion of an application to get a travel document. Tr. at pp. 19-20, 22. The government's position is that petitioner has failed to cooperate by making statements to his embassy about his marriage, the fact that his parents are dead in Africa, the pendency of his civil rights suit and the appeal of his removal order, and by expressing a desire to stay in the United States. In addition the government faults petitioner for his failure specifically to request that the embassy issue a travel document despite all of the above. Tr. at pp. 18, 20-21.

It is undisputed that petitioner has never been convicted of a crime, and that prior to his incarceration he maintained employment. The record also shows that if released petitioner would be able to reside with his wife and that he has sponsorship from her family and the community in which he was residing prior to his incarceration.

## II. Legal Authorities

Post-removal-order detention is governed by 8 U.S.C. § 1231(a), which requires the Attorney General to attempt to effectuate removal within a 90-day removal period. The removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6), the post-removal-order detention statute, implicitly limits an immigrant's detention to a period reasonably necessary to bring about that immigrant's removal. *Id*. at 688-98. The Court noted

9

that the statute does not permit indefinite detention; furthermore, the "reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id*. at 697-702. After that six month period expires, and the immigrant demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, the government must furnish sufficient rebuttal evidence. *Id*. However, the lapse of the presumptive detention period, by itself, does not mandate release, and the petitioner must still provide good reason to believe that his removal is unlikely in the foreseeable future. *See* 533 U.S. at 701. "Once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Section 1231 also provides that if an alien acts to frustrate the government's ability to remove him, the removal period is tolled during the period of the alien's actions. 8 U.S.C. § 1231(a)(1)(C). There is no Fifth Circuit caselaw interpreting this language, but the few cases which do discuss what constitutes a frustration of removal have interpreted this phrase narrowly, even in cases involving petitioners who, unlike the petitioner in this matter, have significant criminal histories.

In *Rajigah v. Conway*, 268 F.Supp.2d 159, 159-160 (E.D.N.Y. 2003), the petitioner filed several challenges in federal court to his underlying state conviction and to his INS detention and removal order. All of his petitions were denied and the stay of his removal was lifted, at which point the petitioner filed appeals of each and obtained a stay pending appeal. *Id*. at 161. Ultimately, all appeals were dismissed as well. *Id*. Nevertheless, the petitioner's embassy

refused to issue a travel document on the basis that petitioner's counsel had informed the embassy that another federal court action would be filed on his behalf, and it was the embassy's policy not to issue travel documents to its own nationals if they have any pending actions in court, regardless of whether or not there is a judicial stay of removal. *Id*. The district court found that the petitioner had not acted in bad faith and that there was no evidence of his failure to cooperate. *Id*. at 165. It concluded that petitioner was not 'frustrating his removal" for purposes of § 1231(a)(1)(C), as a result of his *truthful* communication to his embassy that he intended to file another court action, despite the embassy's policy of not issuing travel documents to its nationals who file court actions. *Id*. at 166. According to the district court, "[r]espondent has made no demonstration that petitioner has in any way acted in bad faith – he has simply availed himself of judicial process and communicated to the Guyanese embassy his plans to do so." *Id*.

In *Seretse-Khama v. Ashcroft*, 215 F.Supp.2d 37, 51 (D. D.C. 2002), the government argued that the petitioner did not cooperate in obtaining travel documents because he told officials with his embassy that he did not want to return to Liberia. The district court noted that there was no dispute that, as the government claimed, the petitioner stated *truthfully* during his interview with the Liberian Consul that he did not want to return to Liberia in light of his lack of family in or ties to Liberia, which he had left in 1980 when he was only eight years old. *Id*. The court also noted, and found important, that the government was *not* claiming that petitioner refused to request travel documents, refused to be interviewed by Liberian officials, ever denied his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents. *Id*. The district court concluded that the caselaw construing what constitutes an affirmative act that prevents one's removal under § 1231(a)(1)(C), does not support the proposition that an alien's statement of a lack of desire to return to his country of original,

without more, amounts to a bad faith failure to cooperate. *Id*.

In contrast, cases finding that a petitioner has failed to cooperate generally involve a failure to provide needed information or the providing of inconsistent information such that a petitioner's identity cannot be verified by the foreign government from whom travel documents are sought. See, e.g., *Lema v. INS*, 341 F.3d 853 (9th Cir. 2003) (petitioner cannot meet his burden to show there is no significant likelihood of removal in the reasonably foreseeable future and his continued detention is authorized by § 1231(a)(1)(C), when he refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government by refusing to provide the Ethiopian embassy with evidence (such as affidavits from family members) to support his claim of Ethiopian nationality after claiming to be Eritrean, and by not filing a new request for travel documents or attempting to contact the Ethiopian consulate); *Powell v. Ashcroft*, 194 F.Supp.2d 209, 210 (E.D.N.Y. 2002) (stating that petitioner "has repeatedly provided the INS with inconsistent information regarding his identity, and these inconsistencies have demonstrably hampered the INS in carrying out his removal"); *Sango-Dema v. Dist. Dir., INS*, 122 F.Supp.2d 213 (D.Mass. 2000) (petitioner refused to provide the INS with a passport and birth certificate, to communicate with officials at the embassy of the country of removal, and to "complete any of the applications necessary to facilitate his return to his country of origin").

The government has argued that Petitioner's actions in copying his embassy with his pleadings and correspondence, and in expressing his desire to stay in this country, constitute a failure to cooperate. However, the government has cited no cases in support of this argument, and the caselaw above indicates that an immigrant who avails himself in good faith of the judicial processes available to him and who represents himself and his position truthfully with the immigration authorities and with his own embassy is not hampering his removal even though

12

the end result of such representations is that the embassy refuses to issue travel documents.

The government also argues that there is uncertainty about the existence of a stay of removal in this matter. A review of the records from the New Jersey District Court and the Sixth Circuit Court of Appeals shows that there is no stay in place, and that there has been no stay in place since the case was transferred to the Sixth Circuit. The undersigned is satisfied that the matter of a stay is not an issue which need be discussed further.

### III. Application of Legal Authorities to Relevant Facts

Petitioner Hango, who has never been convicted of a crime, has been in immigration detention since November 6, 2003. Petitioner has been subject to a final order of removal since the immigration judge's October 2, 2002, order became final administratively. More than six months elapsed from the date petitioner's detention began on November 6, 2003, until ICE attempted to remove him from this country on May 12, 2004. On the latter date, petitioner passively resisted being placed on a plane back to Africa and was not removed. On June 3, 2004, petitioner obtained a stay of the removal order against him which remained in effect until May 16, 2005. Since May 16, 2005, however, there has been no stay of the removal order in effect and petitioner has remained in immigration detention. Including the initial six months in detention, but excluding the approximate year during which a stay was in place, petitioner has been in unencumbered immigration custody for some twenty-one (21) months, far in excess of the six-month presumptively reasonable period. Given the consistent communications to date from the Tanzania embassy, the record does not support that a travel document will issue at any time in the near future. In fact, respondents have not and cannot demonstrate that any travel documents will be issued in a matter of weeks or even months. Under the sliding scale adopted

in *Zadvydas*, the lengthy period of petitioner's post-removal confinement has caused the "reasonably foreseeable future" to shrink to the point that removal must be truly imminent to justify further detention. The record provides more than an adequate basis to prove that removal is not imminent in this case. Instead, the June 20, 2006, letter from the petitioner's embassy (Petitioner's Exhibit 2) makes it clear that, without some change in circumstances or the attitude of the embassy, it is unlikely that travel documents will be issued at all, much less in the reasonably foreseeable future.

The respondents' argument that petitioner is not entitled to relief under *Zadvydas* because he has refused to cooperate in his removal is neither supported by the record nor by the caselaw. As ICE Agent Smith admitted at the evidentiary hearing, petitioner has not lied about who he is, who his parents are, or where he is from. Nor has he refused to provide and sign the necessary documents and applications for the processing of travel document requests. Although his communication with his embassy have certainly been instrumental in its decision not to issue travel documents, that communication has been undisputedly truthful. There is no serious dispute that petitioner has acted in good faith both with respect to his marriage and his federal court litigation. Simply put, there is no evidence of petitioner's failure to cooperate such that the removal period should be considered tolled under § 1231(a)(1)(C).

Finally, the government argues that this case is controlled by the Fifth Circuit's decision in *Andrade v. Gonzales*, __F.3d __, 2006 WL 2136397, and that the petitioner's habeas corpus must be dismissed pursuant thereto. That reliance is misplaced. The *Andrade* decision involved a petitioner who provided nothing more than conclusory statements that his removal would not be immediately forthcoming upon resolution of his appeals. In this case, the government has tried several times since the petitioner's marriage was approved to obtain travel documents,

without success. In addition, petitioner has provided a specific statement from his embassy stating that no travel documents will issue, not only because of his pending litigation, but also because of his valid marriage to a U.S. Citizen and his lack of family in his native Tanzania.

## IV. Conclusion

For the reasons stated above, it is recommended that the Petitioner's petition for a writ of habeas corpus be GRANTED and that he be released from custody under appropriate restrictions.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of September, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE